**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHERIE BOYER,<br>In Her Individual Capacity, and<br>As Next Friend of S.B., a Minor,<br><br>*Plaintiffs*,<br><br>vs.<br><br>GATEWAY REGION YOUNG MEN'S<br>CHRISTIAN ASSOCIATION,<br><br>*Defendant*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Cause No. 4:24-CV-00653-HEA<br><br>JURY TRIAL DEMANDED |

# PLAINTIFFS' FIRST AMENDED COMPLAINT

COME NOW Plaintiffs, S.B., a minor, by and through his Next Friend, Cherie Boyer, and Cherie Boyer in her individual capacity, and for their causes of action against Defendant, Gateway Regional Young Men's Christian Association ("Defendant YMCA"), state the following facts upon their personal knowledge and information:

## Parties

1. S.B. is, and at all times relevant to this Petition was, a minor; a resident of the County of Jefferson, State of Missouri; and a student in the Hillsboro R-3 School District.

2. S.B. is a person with a disability. He is an individual with one or more physical or mental impairments which substantially limit one or more of his major life activities and which, with or without reasonable accommodation, do not interfere with his utilizing Defendant's places of public accommodations.

3. Cherie Boyer, the mother of S.B. and his Next Friend in this action, is and at all times relevant to this Petition was an adult resident of the County of Jefferson, State of Missouri.

4. Defendant YMCA is a nonprofit corporation which is organized in the State of Missouri and which does business and provides services in the County of Jefferson. Defendant YMCA offers or holds out to the general public services, privileges, facilities, advantages, or accommodations for the peace, comfort, health, welfare, and safety of the general public; and it provides shelter, recreation, and amusement to the general public.

5. Defendant YMCA is a place of public accommodation. It offers the following operations, which affect commerce:

(a) nurseries or other places of education;

(b) day care centers or other social service center establishments; and

(c) gymnasia or other places of exercise or recreation.

6. Defendant YMCA is a recipient of federal financial assistance.

<u>Jurisdiction and Venue</u>

7. This Complaint arises under the statutes and common law of the State of Missouri and under the laws of the United States.

8. Plaintiffs have suffered damages in excess of $25,000.

9. Plaintiffs were first injured by the wrongful acts of Defendant in the County of Jefferson, State of Missouri.

<u>General Allegations</u>

10. Defendant YMCA represents publicly that those who participate in its programs are supposed to “experience a supportive and inclusive community.”

11. Defendant YMCA offers a summer-time daycare and recreation camp (“Y Camp”) to children.

12. Defendant YMCA contracts with local school districts to provide students with before- and after-school care. In the Hillsboro R-3 District ("the District"), Defendant YMCA's before- and after-school care program is called "Y Care."

13. Defendant YMCA provides Y Care services to some of the District's students under the terms of a contract.

14. The District contracts with Defendant YMCA to manage and staff the Y Care programs at some of the District's elementary schools, including but not limited to Hillsboro Primary.

15. In 2022 and 2023, the District contracted with Defendant YMCA to staff and operate the Y Care program at Hillsboro Primary School, where Plaintiff S.B. was a student.

16. The District's schools and facilities, including but not limited to Hillsboro Primary School, are places of public accommodation.

Facts Applicable to All Counts

17. S.B. is diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), Oppositional Defiant Disorder (ODD), Autism, and a heart condition. Due to S.B.'s disabilities, he is easily distracted by people, things, and thoughts; requires reminders to initiate and remain on task; will elope if he feels something is too hard or if he is corrected for his behavior; has heightened alertness to stimuli; struggles with shouting and talking excessively; has trouble with following direction; and can be defiant and disruptive.

18. These disabilities are mental impairments that substantially limit S.B.'s major life activities, such as learning, reading, concentrating, thinking, communicating, and working.

19. On May 22, 2022, Ms. Boyer contacted Defendant YMCA regarding Y Camp and Y Care.

20. An employee of Defendant YMCA ("Gore") indicated that Defendant YMCA does make accommodations for children with disabilities.

21. Based on Gore's representation, Ms. Boyer filled out an application for Y Camp and Y Care and submitted documentation from S.B.'s pediatrician and other documentation that demonstrated S.B.'s disabilities and his need for the requested accommodations.

22. One of the requested accommodations was a one-on-one aide (a "Para") to prevent elopement and to moderate S.B.'s behaviors.

23. Defendant YMCA accepted S.B.'s application and enrolled him in Y Camp. Defendant YMCA stated to Ms. Boyer that it would provide a Para to S.B. at Y Camp.

24. During the summer of 2022, Ms. Boyer noticed that a Para was frequently not present with S.B.

25. Ms. Boyer brought her concerns to Defendant YMCA, including a supervisor ("Link"). In August 2022, Ms. Boyer reported to Defendant YMCA an incident where S.B. wandered unattended around a parking lot with an entire spool of ribbon wrapped around his finger.

26. On August 22, 2022, S.B. started attending Y Care after school at Hillsboro Primary.

27. Again, Defendant YMCA stated to Ms. Boyer that it would provide a Para to S.B. at Y Care.

28. Throughout S.B.'s time at Y Care, Defendant rarely provided a Para to S.B. while he was in Y Care, and S.B. was commonly left alone.

29. On September 20, 2022, the principal at Hillsboro Primary called Ms. Boyer and informed her that S. B. eloped from Y Care and was wandering the halls unattended.

30. Ms. Boyer questioned Link about the incident, but Link did not answer where S.B.'s Para was at the time of the elopement.

31. After the incident on September 20, 2022, Ms. Boyer began receiving daily verbal complaints regarding S.B.'s behavior. The behaviors about which Defendant YMCA complained were manifestations of S.B.'s disabilities.

32. Ms. Boyer inquired again about S.B.'s accommodations and also gave recommendations on things that worked well with S.B.

33. On December 15, 2022, Defendant YMCA gave a handful of write-ups for Ms. Boyer to sign regarding S.B. The write-ups were regarding behaviors S.B. displayed due to his disability, behaviors that are more prominent when his accommodations are not met.

34. On December 16, 2022, Ms. Boyer was handed the pink portion of the write-ups provided the previous day, along with one more write-up. Ms. Boyer noticed that the write-ups referenced old dates and were *post hoc* write-ups for alleged behaviors from the past.

35. Defendant YMCA tried to make Ms. Boyer sign a statement agreeing that S.B. would be removed from its programs if his behaviors persisted, but Ms. Boyer refused to sign such a statement.

36. Ms. Boyer asked a supervisor to contact her to discuss the behaviors and accommodations. Instead, however, the executive director for Defendant YMCA ("Siebert") emailed Ms. Boyer and terminated Y Care.

37. Siefert's email falsely stated that Ms. Boyer threatened staff, which she did not do.

38. Defendant YMCA excluded S.B. from its programs after making no accommodations in its zero-tolerance policy for S.B.'s disabilities.

39. S.B. could have successfully accessed Y Care with the requested reasonable accommodation of a Para, or with other accommodations if Defendant had engaged in an interactive process.

40. Defendant's failures to provide reasonable accommodations to S.B. constitute an ongoing and continuing violation of S.B.'s rights to be free from disability discrimination, which persisted well past the date 180 days prior to the filing of the complaints in this case, as described below in the "Exhaustion of Administrative Remedies" section.

41. Defendant excluded Plaintiff S.B. from the Y Care program in retaliation for Ms. Boyer's complaints about Defendant's discrimination against Plaintiff on the basis of his disabilities.

42. Defendant denied disabled students, including Plaintiff S.B., access to the Y Care Program because of their disabilities while allowing non-disabled students or less severely disabled students access to the Y Care Program.

43. In its conduct described in this Complaint, Defendant YMCA acted with deliberate indifference to Plaintiffs' rights and disregarded a strong likelihood that its actions toward S.B. would violate his federally protected rights.

44. As a direct and proximate result of Defendant's failures, Plaintiffs were deprived of the accommodations, advantages, facilities, services, or privileges made available at Y Care, because of S.B.'s disabilities.

45. As a direct and proximate result of Defendant's failures, Ms. Boyer was left without an option for childcare, causing Plaintiffs serious disruption in their daily lives. In fact, Ms. Boyer lost her employment as a result of not having after-school child-care for S.B., resulting in lost wages.

46. As a direct and proximate result of Defendant's conduct, Ms. Boyer lost money that she spent to get S.B. into Defendant YMCA's programs and incurred additional consequential costs.

47. As a direct and proximate result of Defendant's conduct, S.B. has suffered and continues to suffer damages, including but not limited to emotional pain, suffering, inconvenience, and mental anguish; loss of enjoyment of life; and humiliation.

## Exhaustion of Administrative Remedies

48. On or about March 27, 2023, Plaintiffs filed their initial Complaints of Discrimination in the Missouri Commission on Human Rights ("MCHR"), alleging disability discrimination and retaliation under the Missouri Human Rights Act.

49. Under the work-sharing agreement between the Missouri Commission on Human Rights and the federal Equal Employment Opportunity Commission, Plaintiffs' Complaints of Discrimination were effectively dually filed, and both commissions opened cases.

50. On December 27, 2023, the MCHR issued its right-to-sue-letters to Plaintiffs. The Notice of Right to Sue reflects both an MCHR case number, P-06/23-05350, and an EEOC case number, 28E-2023-01224.

51. This action was filed within two years of the discriminatory conduct and 90 days of receipt of the right-to-sue letters.

## Count I – Americans with Disabilities Act
## S.B. v. Defendant

52. Plaintiff incorporates the averments made above as if they were fully set forth herein.

53. Defendant YMCA is a recipient of federal financial assistance.

54. Defendant YMCA is a place of public accommodation, and it operated Y Care at a place of public accommodation.

55. S.B. was, at all times relevant to this Petition, a child with Attention Deficit Hyperactivity Disorder ("ADHD"), Oppositional Defiant Disorder (ODD), Autism, and a heart condition.

56. S.B.'s disabilities substantially limit S.B.'s major life activities, such as learning, reading, concentrating, thinking, communicating, and working, as more fully described in the "Facts Applicable to All Counts" above.

57. Defendant knew of S.B.'s disabilities.

58. S.B. could have participated in Y Care if he had been provided with one-to-one adult support (a "Para").

59. Providing S.B. with a Para would have been reasonable.

60. Defendant failed to provide a Para to S.B. when he was at Y Care, leading to multiple instances of elopement and to alleged behaviors for which S.B. was punished by his expulsion from Y Care.

61. Defendant acted with deliberate indifference to Plaintiff's federally protected rights.

62. As a direct and proximate result of such failure to provide reasonable accommodation, S.B. suffered damages as specified above.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor on Count I; award Plaintiff such sum in excess of $25,000 as will fairly and justly compensate Plaintiff for all damages that he has sustained and is reasonably certain to sustain in the future as a direct

result of Defendant's conduct; and award Plaintiff such additional relief that the Court deems just and proper.

Count II – MHRA Disability Discrimination (§ 213.065 R.S. Mo.)
S.B. v. Defendant

63. Plaintiff incorporates the averments made above as if they were fully set forth herein.

64. At all relevant times, Defendant was a place of public accommodation under the Missouri Human Rights Act ("MHRA").

65. Plaintiff S.B.'s physical or mental impairments, as listed above, substantially limit his major life activities, as set forth above. With or without reasonable accommodations, S.B.'s impairments do not interfere with his utilizing Defendant's places of public accommodations.

66. At all relevant times, as described above, Defendant discriminated against Plaintiff S.B. due to his disability in that Defendant failed to provide reasonable accommodations, as described above, and excluded Plaintiff S.B. from receiving after-school care in the same manner as non-disabled students, because of his disability and/or the severity of his disability.

67. Defendant's actions were undertaken maliciously or in reckless disregard for Plaintiff S.B.'s right to be free from discrimination, and punitive damages are warranted.

68. As a direct and proximate result of the above-described acts, Plaintiff has suffered and will continue to suffer pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff respectfully request that this Court enter judgment in his favor and against Defendant, awarding emotional distress damages, compensatory damages, pre-and post-judgment interest, and attorney's fees and costs, as well as any other relief that this court should find necessary and proper.

Count III – MHRA Association Discrimination (§ 213.070.1(4) R.S. Mo.)
Cherie Boyer v. Defendant

69. Plaintiff incorporates the averments made above as if they were fully set forth herein.

70. At all relevant times, Defendant was a place of public accommodation under the MHRA.

71. S.B. is a person with a disability under the MHRA.

72. At all relevant times, Defendant knew that Ms. Boyer associated with a person with a disability--her son, Plaintiff S.B.

73. At all relevant times, as described above, Defendant discriminated against Plaintiff S.B. due to his disability, in that they failed to provide reasonable accommodations, as described above, and excluded Plaintiff S.B. from receiving after-school care in the same manner with non-disabled students, because of his disability and/or the severity of his disability.

74. At all relevant times, as described above, Defendant discriminated against Ms. Boyer due to her association with an individual with a disability, by not allowing her to place her disabled son in their programs in the same manner with non-disabled children.

75. Defendant's actions were undertaken maliciously or in reckless disregard for Plaintiff S.B.'s right to be free from discrimination, and punitive damages are warranted.

76. As a direct and proximate result of the above-described acts, Plaintiff has suffered and will continue to suffer pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, awarding emotional distress damages, compensatory damages, pre-and post-

judgment interest, and attorney's fees and costs, as well as any other relief that this court should find necessary and proper.

Count IV – MHRA Retaliation (§ 213.070.1(2) R.S. Mo.)
S.B. and Cherie Boyer v. Defendant

77. Plaintiff incorporates the averments made above as if they were fully set forth herein.

78. At all relevant times, Defendant was a place of public accommodation under the MHRA.

79. Ms. Boyer's advocacy for Plaintiff S.B. was a motivating factor in Defendant's continued exclusion and denial of Plaintiffs from child care at Defendant YMCA on equivalent terms with non-disabled students and their families.

80. As a direct and proximate result of the above-described acts, Plaintiffs have suffered and will continue to suffer pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

81. Defendant's actions were undertaken maliciously or in reckless disregard for Plaintiff S.B.'s right to be free from discrimination, and punitive damages are warranted.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendant, awarding emotional distress damages, compensatory damages, pre-and post-judgment interest, and attorney's fees and costs, as well as any other relief that this court should find necessary and proper.

RESPECTFULLY SUBMITTED

*/s/ Daniel J. Rhoads*

Daniel J. Rhoads, 59590
**THE RHOADS FIRM, LLC**
8123 Delmar Blvd., Suite 200
St. Louis, MO 63130
Phone: (855) 895-0997
Fax: (314) 754-9103
therhoadsfirmllc@gmail.com
*Attorney for Plaintiff*
*S.B., a minor, by and through*
*Next Friend, Cherie Boyer*
*And Cherie Boyer, in her individual capacity*

## CERTIFICATE OF SERVICE

The foregoing pleading was filed via the Court's ECF system, effecting service to counsel of record:

Daniel J. Doetzel, dandoetzel@hgstl.com
Willie T. McGarry, williemcgarry@hgstl.com
The Hesse Group, LLC
13354 Manchester Rd., Suite 210
St. Louis, MO 63131
*Attorneys for Defendant*
*Gateway Region YMCA*

*/s/ Daniel J. Rhoads*